**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION**

**FRED BECK, Individually and on behalf of the
Estate of EASTER BECK, Deceased; et al**                                    **PLAINTIFFS**

**VS.**                                              **CIVIL ACTION NO.  3:03CV-60-P-D**

**KOPPERS INC., f/k/a KOPPERS INDUSTRIES,
INC.; et al**                                                              **DEFENDANTS**

**CONSOLIDATED WITH**

**HOPE ELLIS, et al.**                                                     **PLAINTIFFS**

**VS.**                                              **CIVIL ACTION NO. 3:04CV160-P-D**

**KOPPERS INC., f/k/a KOPPERS INDUSTRIES
INC.; et al.**                                                            **DEFENDANTS**

### OPPOSITION TO MOTION TO COMPEL THE COMPLETION OF THE DEPOSITION OF JAMES DAHLGREN, M.D.

MAY IT PLEASE THE COURT:

Now into Court, though undersigned counsel, comes plaintiff in the above captioned matter, who in opposition to defendants', Beasar East, Inc. and Koppers, Inc. (collectively referred hereto as "Defendants"), motion to compel the completion of the deposition of Dr. James Dahlgren, M.D., respectfully represents:

FACTS:

As the Court is well aware, the instant action is a claim for personal injuries brought on behalf of plaintiff, Sherrie Barnes, who died from breast cancer as a result of a lifetime of exposure to toxic substances, known or strongly suspected to be human carcinogens, released into the environment by the Koppers' wood treating facility located near Grenada, Mississippi.

In connection with this claim, counsel for plaintiff consulted with Dr. James G. Dahlgren, M.D., a physician who is board certified in internal medicine specialist and who has focused his

practice for twenty-five (26) years in the internal medicine subspecialty of toxicology, occupational and environmental medicine. As a result of Dr. Dahlgren's review of the discovery had to date in this case, and considering the medical records of Sherrie Barnes, as well as the peer-reviewed medical literature concerning exposure to polycyclic aromatic hydrocarbons, dioxins, and furans, and cancer in humans, Dr. Dahlgren was of the considered opinion that Sherrie Barnes died of breast cancer induced as a result of her lifetime exposure to the toxins released from the Koppers' wood-treating facility located near Grenada, Mississippi.

As the Court is also aware, this matter was originally consolidated with eleven other cases for both discovery and trial. In light of the procedural posture at that time, Dr. Dahlgren examined and prepared a comprehensive report on the results of his examination on those twelve plaintiffs then scheduled for trial as the end of October. Pursuant to this Court's pre-trial scheduling order, Dr. Dahlgren's comprehensive report on all twelve plaintiffs was produced to Defendants on January 31, 2005. Thereafter, Defendants requested dates to schedule Dr. Dahlgren's deposition in an effort to explore the basis of his opinions in this case. Defendants also requested production of Dr. Dahlgren's entire file well in advance of the scheduled date of his deposition in order that he could be cross on this material as well.

Plaintiffs complied with all requests and, as a result, Dr. Dahlgren was produce for his deposition on two full, consecutive, days in Santa Monica, California, first on Tuesday, April 5, 2005, and then again on Wednesday, April 6, 2005. According to the official transcript, a copy of which is attached hereto and made a part hereof, as Exhibit "A", the deposition on Tuesday started at 9:00 a.m. and concluded for the day at 4:00 p.m., resulting in 194 page transcript of deposition testimony. The deposition of Dr. Dahlgren re-commenced the following morning at 8:00 a.m., and, again, according to the official transcript, a copy of which is attached hereto and made a part hereof, as Exhibit "B", the deposition did not conclude until 5:00 p.m., resulting in another 217 page transcript of deposition testimony. According to counsel for Defendants, he had covered eight (8) of

the twelve (12) plaintiffs, including plaintiff in the instant action - Sherrie Barnes (Volume 12 of the Deposition transcript at page 408, line 4). Based upon the lateness of the day, nearly sixteen (16) hours of testimony, and over 400 pages of deposition transcript testimony, the deposition was continued for completion at a later time.

In the interim, Defendants filed a motion to sever the claims of the twelve plaintiffs. The Court, after considering the request and the law and argument of all sides, granted the defense's motion, setting separate trial dates for each plaintiff. As the record will reflect, Sherrie Barnes' case was assigned the first trial fixing for the original trial date.

Thereafter, Defendants re-noticed the continuation deposition of Dr. Dahlgren in the Sherrie Barnes matter for, again, two full, consecutive, days in Santa Monica, California, first on Monday, May 9, 2005, and then again on Tuesday, May 10, 2005. According to the official transcript, the deposition on Tuesday started at 9:10 a.m. and concluded for the day at 5:00 p.m., resulting in 232 page transcript of deposition testimony. The deposition of Dr. Dahlgren re-commenced the following morning at 9:00 a.m., and, again, according to the official transcript, the deposition did not conclude until 5:00 p.m., resulting in another 215 page transcript of deposition testimony. Based again upon the lateness of the day, nearly thirty-two (32) hours of testimony, and over 850 pages of deposition transcript testimony, the deposition was continued for completion at a later time.

LAW AND ARGUMENT:

Despite all the accommodations made by counsel for the plaintiffs, Defendants now petition the Court for and order, directing plaintiff to again produce Dr. Dahlgren for another sixteen (16) hours in order that Defendant be allowed to complete their discovery deposition of Dr. Dahlgren. In support of their motion, Defendants characterize Dr. Dahlgren's expert report and opinions in this case as lengthy and complex. Defendants further suggest that Dr. Dahlgren has been deposed in other cases where he has been consulted and, in all of those cases, he has been deposed in 'multiple' sessions. Defendants suggest that because it is 'not unusual' for Dr. Dahlgren to testify in

3

multiple sessions, Defendants should be allowed another two days to complete his discovery deposition.

In opposition to Defendants' motion, plaintiffs would show that defendants have had an ample opportunity to discover both the opinions upon which Dr. Dahlgren can be expected to testify on at the trial of this matter, as well as the basis for each of those opinions. The question presented for the Court to consider is the reasonableness of defendants' request.

As reflected in Defendants' brief in support of their motion to compel, defendants spent the last two days in deposing Dr. Dahlgren on the issues arguably related to Sherrie Barnes. A simple review of the Volumes 3 and 4 of the deposition transcript of Dr. Dahlgren will reflect an astonishing absence of any direct reference to Sherrie Barnes. This fact is reflected in Defendant's brief in support of their motion to compel, where the defense states that Sherrie Barnes was mentioned only thirteen (13) times in the first session (Volume 3) and subsequently 38 times in the second (Volume 4). In making such a reference, the defense's position is even more credulous when considered in light of the fact that of the 232 pages in Volume 3 of the deposition of Dr. Dahlgren, Sherrie Barnes was mentioned only on eight (8) separate pages of Volume 3. Likewise, in Volume 4 of the deposition, plaintiffs name was mentioned on only 25 separate pages in the remaining 215 pages. Collectively, plaintiff's name was mention on only 33 separate pages in the some 447 pages making up Volumes 3 and 4 of Dr. Dahlgren's deposition.

As the Court is well aware, litigation resources, in this day and age, are becoming a rare commodity. As attorneys, we are constantly driven to provide a high quality product at the lowest possible expense to our clients, always mindful of the limited judicial resources as well. Rarely is it the place of the Court, much less opposing counsel, to dictate how attorneys should practice; but if, as here, choices are made as to how to utilize these limited resources, then, so be it. Defendants should not be afforded unlimited and unreasonable access to pursue discovery ad infinitum.

4

Here, Defendants complain of Dr. Dahlgren's 304 page report. As the Court may recall, this report was produced at a time when there were twelve (12) plaintiffs. Now, there is only one. One can only suspect that Defendants will continue to depose Dr. Dahlgren in all remaining eleven (11) cases. The fact that defendants spent at least sixteen (16) hours developing regarding Dr. Dahlgren's background should not be used to prejudice plaintiff in the instant action. Defendants have been afforded another sixteen (16) hours regarding the basis of Dr. Dahlgren's opinions specifically as they relate to Sherrie Barnes. It is the defenses' prerogative as to how they spend these limited resources. If they chose to squander such resources, it should not be at plaintiff's expense.

Defendants also complain of Dr. Dahlgren's reference to 'new' peer-reviewed articles concerning the recognized association of cancer, including breast cancer, and exposure to polycyclic aromatic hydrocarbons (PAHs), chlorinated dioxins/furans, and other cancer causing chemicals found in creosote and pentachlorophenol (PCP). These articles are nothing new. They are readily found in the public domain. Most have been around for years. The articles referred to by Defendants simply further support the opinions of Dr. Dahlgren and the basis therefor. Defendants can not claim to be prejudice.

Further, again a cursory review of the record will reflect, Defendants spent, at a minimum, thirty (30) minutes per article questioning Dr. Dahlgren on the relevance of each article. At this rate, it will take years to complete the deposition of Dr. Dahlgren. As mentioned above, there is nothing new to be discovered. The article referred to by the defense serve only to further support Dr. Dahlgren's expert testimony regarding the strong relationship between exposure to these known or highly suspicious carcentigens and plaintiff's ultimate succumb to breast cancer. If Defendants did not have a reasonable opportunity to address these issues with Dr. Dahlgren, then we would not be here. But if Defendants did have a reasonable opportunity to address these issues with Dr. Dahlgren and choose not to, then that's another question.

5

CONCLUSION:

Plaintiffs believe the record in this matter will reflect that Defendants have had just that - Defendants have had a reasonable opportunity to explore with Dr. Dahlgren his opinions with regard to claims made herein on behalf of Sherrie Barnes. The fact that Defendants desire to continue this single line of questioning, ad infinitum, is completely unreasonable. This is further demonstrated by the defense's "hope" the deposition of Dr. Dahlgren, in this case, can be completed in the additional two days, as requested. Given this, Defendants have failed to establish any justifiable prejudice by limiting discovery in this fashion; and, as a result, Defendants' arguments are, therefore, without merit. Accordingly, plaintiff respectfully represents that Defendants' motion to compel the completion of the deposition of Dr. James G. Dahlgren, M.D. should be denied and that all costs of this motion be assessed against movers.

Respectfully submitted,

FRED BECK, ET AL

By: ___/s/ M. Keith Prudhomme

   M. KEITH PRUDHOMME (LA Bar No. 14336)
   Hunter W. Lundy (MS Bar No. 1495)
   David H. Hanchey (LA Bar No. 19927)
   James D. Cain, Jr. (LA Bar No. 22288)
   Catherine H. Cramer (LA Bar No. 24920)
     LUNDY & DAVIS, LLP
   Post Office Box 3010
   Lake Charles, Louisiana 70602-3010

   Andre F. Ducote (MS Bar No. 10118)
   LUNDY & DAVIS, LLP
   1855 Lakeland Drive, Ste. R-306
   Jackson, Mississippi 39216

6

OF COUNSEL:

J. P. Hughes, Jr. (MSB # 8967)        Frank Thackston
Carter C. Hitt, (MSB # 100789)        LAKE TINDALL, LLP
HUGHES LAW FIRM, P.A.             Post Office Box 918
510 Azalea Drive, Suite 100         Greenville, Mississippi 38702
Oxford, Mississippi  38655

## CERTIFICATE OF SERVICE

       I, Hunter W. Lundy, do hereby certify that I electronically filed the foregoing with the

Clerk of Court using the ECF System which sent notification of such filing to the following:

Christopher A. Shapley, Esq.       Cal R. Burnton, Esq.
Robert G. Gibbs, Esq.            William M. Barnes, Jr., Esq.
Trudy D. Fisher, Esq.            Jeffrey K. McGinness, Esq.
William Trey Jones, III, Esq.      Wildman, Harrold, Allen & Dixon
Brunini, Grantham, Grower & Hewes, PLLC   225 West Wacker Drive, Suite 2800
Post Office Box 119              Chicago, Illinois 60606-1229
Jackson, Mississippi 39205-0119

Reuben V. Anderson, Esq.       Glenn F. Beckham, Esq.
Phelps Dunbar                 Chris W. Winter, Esq.
Post Office Box 23066          Upshaw, Williams, Biggers, Beckham, et al
Jackson, Mississippi 39225-3066   Post Office Drawer 8230
                                 Greenwood, Mississippi 38935-8230

       I also do hereby certify that a true and correct copy of the above and foregoing pleading

has been forwarded via first class mail to the following:

Jay Gore, III, Esq.             Robert Clark, III, Esq.
Gore, Kilpatrick, Purdie, Metz & Adcock   P.O. Box 179
Post Office Box Drawer 901      Lexington, MS 39095-0179
Grenada, Mississippi 38902

Jackson R. Sharman, III, Esq.     Michael Ulmer, Esq.
Lana K. Alcorn, Esq.           Tobias Coleman, Esq.
LIGHTFOOT FRANKLIN & WHITE, LLC   Watkins & Eager, PLLC
400 20th Street North         P.O. Box 650
Birmingham, AL 35203-3200     Jackson, MS 39205
       THIS, the__21st__ day of June, 2005.

                      ___/s/ Hunter W. Lundy
                         Hunter W. Lundy

      Dated this _____ day of June, 2005.

                 FRED BECK, ET AL

                 By: _____
                   M. KEITH PRUDHOMME

7

OF COUNSEL:

J. P. Hughes, Jr. (MSB # 8967)
Carter C. Hitt, (MSB # 100789)
HUGHES LAW FIRM, P.A.
510 Azalea Drive, Suite 100
Oxford, Mississippi  38655
Telephone:     662-234-6080
Facsimile:      662-234-6042

Frank Thackston
LAKE TINDALL, LLP
Post Office Box 918
Greenville, Mississippi 38702
Telephone:    662-378-2121
Facsimile:     662-378-2183

Hunter W. Lundy (MSB # 1495)
James D.  Cain, Jr.  (*pro hac vice*)
David H.  Hanchey (*pro hac vice*)
M.  Keith Prudhomme (*pro hac vice*)
LUNDY & DAVIS, LLP
Post Office Box 3010
Lake Charles, Louisiana 70602-3010
1855 Lakeland Drive, Ste.  R-306
Jackson, Mississippi 39216
Telephone:        337-439-0707
                        601-362-0001
Facsimile:        337-439-1029
                        601-362-0661

ATTORNEYS FOR PLAINTIFFS

## **CERTIFICATE OF SERVICE**

I, M. KEITH PRUDHOMME, do hereby certify that I have this day forwarded, via United States Mail postage prepaid, a true and correct copy of the above and foregoing document to:

Christopher A. Shapley, Esq.
Robert G. Gibbs, Esq.
Trudy D. Fisher, Esq.
William Trey Jones, III, Esq.
Brunini, Grantham, Grower & Hewes, Pllc
Post Office Box 119
Jackson, Mississippi 39205-0119

Reuben V. Anderson, Esq.
Phelps Dunbar
Post Office Box 23066
Jackson, Mississippi 39225-3066

Jay Gore, III, Esq.
Gore, Kilpatrick, Purdie, Metz & Adcock
Post Office Box Drawer 901
Grenada, Mississippi 38902

Cal R. Burnton, Esq.
William M. Barnes, Jr., Esq.
Jeffrey K. McGinness, Esq.
Wildman, Harrold, Allen & Dixon
225 West Wacker Drive, Suite 2800
Chicago, Illinois 60606-1229

Glenn F. Beckham, Esq.
Chris W. Winter, Esq.
Upshaw, Williams, Biggers, Beckham & Riddick, LLP
Post Office Drawer 8230
Greenwood, Mississippi 38935-8230

THIS, the _____ day of June, 2005.

_____
M. KEITH PRUDHOMME