IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION

ALICE HILL on behalf of the estate of
DAVID HILL, Deceased, ET AL.,                                    PLAINTIFFS,

VS.                                                              CIVIL ACTION NO. 3:03CV060-P-D

ILLINOIS CENTRAL RAILROAD
COMPANY, ET AL.,                                                 DEFENDANTS.

**MEMORANDUM OPINION**

This matter comes before the court upon Defendant Illinois Central Railroad Company's motion for summary judgment [1254]. After due consideration of the motion and the responses filed thereto, the court is prepared to rule.

**I. FACTUAL BACKGROUND**

The plaintiffs initiated this action, styled *Beck, et al., v. Koppers Industries, Inc., et al.,* on March 20, 2003. At that time there were 110 plaintiffs. On April 18, 2005 the court entered an Order severing 98 of the plaintiffs and dismissing their claims without prejudice, while retaining 12 plaintiffs. The claims of these 12 plaintiffs were then to be tried separately pursuant to Fed. R. Civ. P. 42(b). Thus, the claims of the initial 12 plaintiffs were not severed apart from each other, but rather were set for separate trials. On January 20, 2005 the court consolidated the case of *Ellis, et al., v. Koppers Industries Inc., et al.*, Cause Number 3:04CV160 with the instant action. Thus, added to the 12 remaining plaintiffs in the *Beck* action were the 948 plaintiffs from the *Ellis* case, for a total of 960 plaintiffs in the instant *Beck/Ellis* matter. Furthermore, during the first week of December 2005, the plaintiffs filed approximately 91 additional cases against the defendants. Accordingly,

1

there are over one thousand plaintiffs who are seeking damages against Koppers Industries and Illinois Central for allegedly causing injuries by emanating pollution from Koppers' Grenada, Mississippi wood-treatment facility.

In April and May of 2006, the parties tried the claims of the first of the initial 12 plaintiffs, those of Kenesha L. Barnes on behalf of the estate of her mother, Sherrie Barnes, deceased. The jury found in favor of the plaintiff regarding her claims against Koppers, but found in favor of Illinois Central on her claims against Illinois Central. On appeal, the Fifth Circuit Court of Appeals reversed and rendered the verdict, concluding that the statute of limitations period had run on Barnes' claims.

The second trial is currently scheduled to begin on February 1, 2010 which will involve the claims of the second plaintiff from the initial 12, those of Alice Hill on behalf of the estate of David Hill, deceased.

In the instant motion, Illinois Central seeks summary judgment on Hill's claims against it, as well on the claims of at least the remaining 10 plaintiffs from the initial 12 plaintiffs. Illinois Central essentially argues that because it did not own or operate the Koppers plant, it cannot be held liable for pollution emanating from the plant to the plaintiffs' homes. Rather, Illinois Central maintains, Koppers as the owner and operator of the plant bore the sole responsibility for pollution control, not its customer, Illinois Central. The railroad also argues that the plaintiff has failed to demonstrate causation regarding the alleged actions of Illinois Central – *i.e.*, that the plaintiff's experts do not specifically mention how Illinois Central was responsible for specific pollution that can cause Hill's pancreatic cancer (general causation) and how they did cause his cancer (specific causation).

The plaintiff argues that there is ample evidence establishing genuine issues of material facts

2

regarding the level of control that Illinois Central exerted upon Koppers since Illinois Central was the Grenada plant's largest customer, it had inspectors on-site at the plant full-time, and specifically directed how the crossties were treated with the subject chemicals. The plaintiff also contends that Illinois Central is responsible for pollution that emanated from Koppers' boiler since Illinois Central, for a time, provided its used crossties to Koppers for the latter to burn for energy and that Illinois Central did not ensure that Koppers safely controlled the pollution from the boiler.

## II. DISCUSSION

### A. Summary Judgment Standards

Summary judgment should be entered only if "[t]here is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment has the initial burden of demonstrating through the evidentiary materials that there is no actual dispute as to any material fact in the case. *Celotex Corp. v. Catrett*, 477 U.S. 3l7, 323 (l986). On motion for summary judgment, "[t]he inquiry performed is the threshold inquiry of determining whether there is a need for a trial -- whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (l986). In determining whether this burden has been met, the court should view the evidence introduced and all factual inferences from that evidence in the light most favorable to the party opposing the motion. *Id*. Furthermore, "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

The summary judgment procedure does not authorize trial by affidavit. Rather, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict." *Anderson*, 477 U.S. at 255. Accordingly, a court may not decide any factual issues found in the record on motion for summary judgment, but if such material issues are present, the court must deny the motion and proceed to trial. *Impossible Elec. Tech. v. Wackenhut Protection Systems*, 669 F.2d l026, l03l (5th Cir. l982); *Environmental Defense Fund v. Marsh*, 65l F.2d 983, 99l (5th Cir. l98l); *Lighting Fixture & Electric Supply Co. v. Continental Ins. Co.*, 420 F.2d l2ll, l2l3 (5th Cir. l969).

Under the provisions of Federal Rule of Civil Procedure 56(e), a party against whom a motion for summary judgment is made may not merely rest upon his pleadings, but must, by affidavit, or other materials as provided in Rule 56, inform the court of specific facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324.

Summary judgment is not proper if a dispute about a material fact is "genuine," or in other words the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson*, 477 U.S. at 248. There is no such issue unless the evidence sufficiently supports the non-moving party's version of the facts for a jury to return a verdict in the non-moving party's favor. *Id*. at 249. The relevant inquiry is whether or not there is sufficient disagreement on the facts to submit them to the jury or whether it is so one-sided that one party should prevail as a matter of law. *Id*. at 251. The issue must be genuine, and not pretended, and the evidence relied on to create such an issue must be substantial. *Southern Distributing Co. v. Southdown, Inc.*, 574 F.2d 824, 826 (5th Cir. 1978).

4

**B. Control**

The first issue arising from Illinois Central's motion for summary judgment is whether the plaintiff has demonstrated genuine issues of material facts warranting a trial on whether Illinois Central exerted sufficient control to be said to be jointly responsible for the pollution that migrated from the Koppers plant and allegedly caused injury to the plaintiff.

In *Allen v. Choice Hotels International*, cited by the plaintiff in this matter, the Mississippi Court of Appeals, citing Mississippi Supreme Court precedent, observed that there is precedent in Mississippi "regarding when a third party ... can be held liable for acting as the master of another party." 942 So.2d 817, 821 (Miss. Ct. App. 2006). Quoting *Fruchter v. Lynch Oil Co.*, 522 So.2d 195, 199 (Miss. 1988), the Court of Appeals stated:

> Our cases in the field revolve around the idea of control. The right to control is as important as de facto control at the tortious moment, for the right to control the work of another carries with it the correlative obligation to see to it that no torts shall be committed by the other in the course of the work.
>
> \*\*\*
>
> Therefore, one who controls, or has the right to control, the work of another may be liable as the master of that party. However, the potential control does not create liability unless the alleged master had the right to control the means as well as the ends. 'There is another fact premises sometimes pointing to non-liability: If the party ... is concerned only with the ultimate results and not the details of [the] work.'

*Allen*, 942 So.2d at 821 (internal citations omitted).

Regarding the second paragraph of the above block quote, it seems undisputed that Illinois Central did in fact exert some control over the means Koppers used to treat cross-ties meant for Illinois Central – *e.g.*, Illinois Central specified the types and amounts of chemicals, etc. It also seems undisputed that Illinois Central was not only concerned with the ultimate results of the work,

5

but also the details of the work, as evidenced by the presence of full-time, on-site inspectors.

However, the analysis does not end here. As cited by the Court of Appeals in *Allen*, the Mississippi Supreme Court in *Kisner v. Jackson*, 132 So. 90, 91 (1931) provided a list of ten, non-exclusive factors to determine whether a party is a master of another party, thereby conferring liability upon the master for torts arising from the relationship. The court will consider these factors in turn, taking the facts in a light most favorable to the plaintiff.

The first *Kisner* factor is "[w]hether the principal master has the power to terminate the contract at will." *Kisner*, 132 So. at 91. The plaintiff has not demonstrated that Illinois Central had the power to terminate its various contracts entered into with Koppers over the years. A review of the contracts provided in Exhibits S and U to their motion for summary judgment does not show that Illinois Central had the right to unilaterally terminate its contracts. Accordingly, this factor resolves in favor of Illinois Central.

The second factor is "whether he has the power to fix the price in payment for the work, or vitally controls the manner and time of payment." *Id*. The plaintiff has submitted no proof that Illinois Central fixed the price for wood treatment, nor that Illinois Central vitally controls the manner and time of payment. Thus, this factor is resolved in favor of Illinois Central.

The third factor is "whether he furnishes the means and appliances for the work." *Id*. It is undisputed that Koppers, not Illinois Central, furnished the means and equipment for the wood treatment. Accordingly, this factor is resolved in favor of Illinois Central.

The fourth factor is "whether he has control of the premises." *Id*. The court interprets this factor to mean that the master has the primary control of the premises, such that the master determines when the premises opens and closes, when employees are to start and end their shifts,

etc. The plaintiff has offered no such evidence with regard to the plant as a whole. Thus, this factor is resolved in favor of Illinois Central.

The fifth factor is "whether he furnishes the materials upon which the work is done and receives the output thereof, the contractor dealing with no other person in respect to the output." *Id*. The plaintiff has submitted evidence that Illinois Central, for a time, provided its own green wood to be treated. Thus, the court resolves this factor in favor of the plaintiff.

The court believes that in the circumstances of this case, the sixth and eighth *Kisner* factors are identical and will thus be treated as one factor. The sixth factor is "whether he has the right to prescribe and furnish the details of the kind and character of work to be done." *Kisner*, 132 So. at 91. The eighth factors is "whether he has the right to direct the details of the manner in which the work is to be done." The plaintiff has offered evidence that Illinois Central, through its full-time, on-site inspectors, at times directed and prescribed certain details of the kind and character of the treatment of cross-ties. This factor thus resolves in favor of the plaintiff.

The seventh factor is "whether he has the right to supervise and inspect the work during the course of the employment." *Kisner*, 132 So. at 91. Because Illinois Central maintained full-time, on-site inspectors, this factor resolves in favor of the plaintiff.

The ninth factor is "whether he has the right to employ and discharge the subemployees and to fix their compensation." *Kisner*, 132 So. at 91. Because the plaintiff has not offered evidence in this regard, this factor is resolved in favor of Illinois Central.

The tenth factor is "whether he is obliged to pay the wages of said employees." Similarly, this factor resolves in favor of Illinois Central.

After viewing the facts in a light more favorably to the plaintiff, analysis of the *Kisner*

factors results in three in favor for the plaintiff and six in favor of Illinois Central – after construing the sixth and eighth factors as one factor given that they are identical in the circumstances of this case. However, as cited above, the Courts in *Allen* and *Kisner* recognized that the list of factors was non-exclusive. Accordingly, the court will consider other relevant factors.

First, and perhaps most importantly, the Mississippi Supreme Court in *Kisner* observed that the alleged master in that case "is not in law responsible for injuries caused by [the alleged servant] if [the alleged servant] was free of [the master's] will – 'actually and substantially free of his control.'" *Kisner*, 132 So. at 91. In response to the question "Why couldn't they [Koppers] just have said no?," referring to the specific instructions Illinois Central gave to Koppers in treating wood intended for Illinois Central, Dr. Cheremisinoff, the plaintiff's sole expert witness regarding Illinois Central, replied "I think, again, the impression I got was because of the sensitivity with being a sole source supplier to Illinois Central, that they were afraid of doing that. *But you're correct, they always had that option of saying no.*" Exh. E, C to Illinois Central's Motion for Summary Judgment, Deposition of Cheremisinoff at 1354-1356 (emphasis added). In response to the next question, "Koppers and Beazer always had the option of saying no to any request from Illinois Central concerning the use of the cylinders or process operations, did they not?" Dr. Cheremisinoff replied, "Or any other client. That's correct. That's the choice that they made." *Id*.

Though Illinois Central was a large customer of Koppers, the evidence cited above demonstrates that Illinois Central ultimately remained a customer – requests from whom Koppers had the option to refuse. The court thus concludes that this factor – whether Koppers was "actually and substantially free of [Illinois Central's] control" – resolves in favor of Illinois Central as a matter of law. In other words, even though the plaintiff has shown evidence that Illinois Central has exerted

some control as one of Koppers' major customers, the plaintiff's expert admits that Koppers remained actually and substantially free of that control in that Koppers could have refused their customer's specification requests.

Another factor relevant to the issue of control is whether the plaintiff has demonstrated a genuine issue of material fact as to whether Illinois Central and Koppers were involved in a partnership or joint venture. This is a relevant factor since Koppers is not a subsidiary of Illinois Central and the only way Koppers could *not* have been "actually and substantially free of [Illinois Central's] control" and unable to refuse Illinois Central's treatment requests is if Koppers were in a partnership or a joint-venture with Illinois Central.

Regarding partnerships, the Mississippi Supreme Court in *Century 21 Deep South Properties v. Keys* stated that the "three main questions that are considered in partnership determination are (1) the intent of the parties, (2) the control question, and (3) profit sharing." 652 So.2d 707, 714 (Miss. 1995). "Of the three factors, profit sharing appears to be most important." *Id*. In *Smith v. Redd*, the Court observed that "[a] partnership defined by statute is 'an association of two (2) or more persons to carry on as co-owners of a business for profit.'" 593 So.2d 989, 992 (Miss. 1991) (quoting Miss. Code Ann. §79-12-11 (1972)). "Control by itself is not the exclusive indicator of a partnership." *Id*. at 994. The Court in *Redd* noted that "[p]rofit sharing is specifically mentioned as *prima facie* evidence of partnership in section 7-12-13(4)." *Id*. Ultimately, the Court concluded in *Redd* that "because the Uniform Partnership Act requires that the relationship be one for profit, the sharing of profits is an essential element of a partnership." *Id*.

Similarly, joint ventures require sharing profits and losses. In *Pittman v. Weber Energy Corp.*, the Mississippi Supreme Court cited a prior case noting that a joint venture requires "an

9

understanding that they are to share in profits and losses and each [is] to have a voice in [the joint venture's] management." 790 So.2d 823, 826 (Miss. 2001) (quoting *Hults v. Tillman*, 480 So.2d 1134, 1143 (Miss. 1985).

Since the plaintiff has not alleged that Illinois Central directly shared in the profits and losses of Koppers, the court concludes that Illinois Central's relationship with Koppers was neither a partnership nor a joint venture as a matter of law. Accordingly, this factor is resolved in favor of Illinois Central.

Having considered the facts in a light most favorable to the plaintiffs, the court concludes that since eight of the eleven control factors undisputedly resolve in favor of Illinois Central, the plaintiffs have not demonstrated genuine issues of material fact warranting a trial on whether Illinois Central exerted enough control, as a matter of law, over the Koppers plant to render Illinois Central jointly liable for the pollution that the plaintiff alleges injured him.'

## C. Applicability of Ruling

Since the court has held that Illinois Central may not be held liable as a matter of law and that this analysis appears to be the same in all cases pending before the court, the court directs the parties to show cause within 30 days of entry of this opinion why this ruling should not apply to all plaintiffs in all pending cases.

### III. CONCLUSION

For the reasons discussed above, the court concludes that Defendant Illinois Central Railroad Company's motion for summary judgment [1254] on the claims of Alice Hill on behalf of David Hill should be granted. Accordingly, a Final Judgment shall issue forthwith,

**THIS DAY** of October 20, 2009.

/s/ W. Allen Pepper, Jr.
W. ALLEN PEPPER, JR.
UNITED STATES DISTRICT JUDGE