# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF MISSISSIPPI
# WESTERN DIVISION

ALICE HILL, on Behalf of DAVID HILL,
Deceased,                                                              PLAINTIFF,

VS.                                                    CIVIL ACTION NO. 3:03CV60-P-D

KOPPERS, INC. and BEAZER EAST, INC.,                                   DEFENDANTS.

## MEMORANDUM OPINION

These matters come before the court upon the defendants' motion for summary judgment [1275] and motions to exclude the expert testimony of William R. Sawyer [1271] and James G. Dahlgren [1273]. After due consideration of the motions and the responses filed thereto, the court is prepared to rule.

## I. FACTUAL BACKGROUND

Alice Hill, on behalf of her husband David Hill, deceased, filed this action, along with many other plaintiffs, on March 20, 2003. The plaintiffs all allege that Koppers, Inc. and Beazer East, Inc., owners at different times of a wood treatment facility in Grenada, Mississippi, as well as Illinois Central Railroad, caused chemical pollution to emanate from the wood treatment facility into the neighborhood occupied by the plaintiffs, causing physical injuries and property damage. More specifically, the Fourth Amended Complaint levies the following causes of action: (1) negligence, (2) gross negligence, (3) negligence per se, (4) "intentional tort," (5) conspiracy, (6) strict liability, (7) trespass, (8) private nuisance, and (9) failure to warn.

Initially, this case had 110 plaintiffs. The court severed 98 of those plaintiffs and ruled that the remaining 12 plaintiffs would remain under the rubric of the same cause number with separate trials. The plaintiffs then filed the *Ellis* action, adding approximately 948 plaintiffs. The court

consolidated the *Ellis* plaintiffs with the 12 in the instant case. Furthermore, there are over 80 additional separate identical actions pending, bringing the total number of plaintiffs involved in this litigation to well over one thousand.

The claims of the first plaintiff, Kenesha Barnes on behalf of her mother Sherrie Barnes, deceased, were tried in May 2006. The jury returned a verdict in favor of the plaintiff on her claims against Koppers, Inc. and Beazer East, while finding for Illinois Central on her claims against them. Subsequently on appeal, the Fifth Circuit Court of Appeals reversed and rendered the plaintiff's verdict on the grounds that the statute of limitations period had run on the Kenesha Barnes's claims.

At issue at present are the claims of Alice Hill on behalf of her husband, David Hill, who died July 3, 2004. As the court has already granted summary judgment to Illinois Central and thereby dismissed her claims against Illinois Central, Alice Hill's claims remain against Koppers, Inc. and Beazer East, Inc.

The remaining defendants filed motions to exclude the expert testimony of the plaintiff's two causation experts, Dr. William Sawyer and Dr. James Dahlgren. The defendants argue that their testimony should be excluded because neither has demonstrated reliably that the subject chemicals can cause Mr. Hill's injuries (general causation) and that they did in fact cause Mr. Hill's injuries (specific causation). The defendants' motion for summary judgment argues that since the plaintiff's experts have not provided reliable and timely causation opinions, the plaintiff's claims should be dismissed for failure to create a genuine issue of material fact regarding causation.

## II. DISCUSSION

**A. *Daubert* Motions to Exclude Testimony of Drs. Sawyer and Dahlgren**

**1. Rule 702 Standards**

Fed. R. Evid. 702 provides:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

The current text of Rule 702, as amended in 2000, reflects the Supreme Court's decisions in *Daubert v. Merrell Dow Pharmaceuticals., Inc..*, 509 U.S. 579 (1993) and *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999). "In Daubert the Court charged trial judges with the responsibility of acting as gatekeepers to exclude unreliable expert testimony, and the Court in Kumho clarified that this gatekeeper function applies to all expert testimony, not just testimony based in science." Advisory Committee's Note on 2000 Amendment of Fed. R. Evid. 702.

Ultimately, the district court must "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert.*, 509 U.S. at 589. Under the familiar *Daubert*/*Kumho* standards and their progeny, it is not the court's duty to determine in a motion in limine to exclude an expert's testimony whether the expert in question is correct. This decision falls squarely within the province of the jury. Essentially, the court is the gate-keeper charged with determining whether the expert's testimony is reliable and relevant enough to not be junk science or mere paid-for opinions.

There are many factors to consider in whether to open the gate to an expert. These factors

begin with Fed. R. Civ. P. 26(a)(2)'s provisions regarding expert reports. Next come the primary factors under Fed. R. Evid. 702. To aid in considering the essentials of Rule 702, the decision in *Daubert* set forth several factors the courts should consider in its gate-keeping function. The Advisory Committee's Note on the 2000 Amendment of Rule 702 sets forth additional factors. For the purpose of clarity, the court will set forth all of the factors germane to considering whether to open the gate in the following manner:

### Fed. R. Civ. P. 26(a)(2)

1. Did the expert turn in an expert report?

2. Did the expert report contain:

   (a) a complete statement of all opinions?
   (b) the basis and reasons therefor?
   (c) the data considered in forming the opinion?
   (d) any exhibits to be used as a summary of opinions?
   (e) the qualifications of the witness?
   (f) publications authored by witness in the last 10 years?
   (g) compensation
   (h) other cases in which the expert has testified in the last 4 years?

3. Were the expert disclosures made in a timely manner?

4. Were the opinions properly and timely supplemented pursuant to FRCP 26(e)(1)?

### Fed. R. Evid. 702

5. Is the witness qualified by knowledge, skill, experience, training, or education?

6. Is the testimony based on sufficient facts?

7. Is the testimony the product of reliable methods?

8. Did the witness apply those methods to the facts reliably?

### *Daubert* factors in determining Rule 702 requirements

9. Can or has the theory/technique been tested? Can the theory/technique be challenged or is it a subjective, conclusory approach?

10. Is the theory/technique subject to peer-review or publication?

11. Is there a known or potential rate of error of the theory/technique when applied?

12. Were standards and controls used?

**Advisory Committee Notes to 2000 Amendment of FRE 702 factors**

13. Did the theory arise from litigation or independent research?

14. Is there "too great an analytical gap between the data and the opinion proffered," that is, does the theory "fit" with the facts of the case? *General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

15. Did the expert adequately consider alternative explanations?

16. Was the expert "as careful as he would have been in his regular professional work outside his paid litigation consulting"? *Sheehan v. Daily Racing Form, Inc.*, 104 F.3d 940, 942 (7th Cir. 1997).

17. Is the expert's field of expertise known to reach reliable results for the type of opinion proffered?

"[A] trial judge *may* consider one or more of the more specific factors that *Daubert* mentioned when doing so will help determine that testimony's reliability ... the test of reliability is 'flexible,' and *Daubert*'s list of specific *factors neither necessarily nor exclusively applies to all experts or in every case*."*Kumho*, 526 U.S. at 141 (1999) (emphasis in original). "The trial court must have the same kind of latitude in deciding *how* to test an expert's reliability, and to decide whether or when special briefing or other proceedings are needed to investigate reliability, as it enjoys when it decides *whether or not* that expert's relevant testimony is reliable." *Kumho*, 526 U.S. at 152. The district court has wide discretion in determining the admissibility of expert testimony, and its decision will be disturbed only for abuse of discretion. *Moore v. Ashland Chem. Inc.*, 151

F.3d 269, 274 (5th Cir. 1998).

## 2. *Daubert* Analysis

The defendants' primary argument is that the causation opinions of Drs. Sawyer and Dahlgren should be excluded because they failed to demonstrate reliably that the subject chemicals can and did cause Mr. Hill's pancreatic cancer which in turn lead to his death. The defendants argue that the plaintiff has attempted on the eve of trial to change Mr. Hill's cause of death from pancreatic cancer to gastrointestinal cancer. The defendants urge, and it has been undisputed, that both Sawyer and Dahlgren admitted in their recent depositions that there is no scientific literature demonstrating that the subject chemicals can cause pancreatic cancer. The defendants thus maintain that the plaintiff's causation experts have attempted to "change" the cause of death to gastrointestinal cancer because of scientific literature pointing to a connection between some of the subject chemicals and gastrointestinal cancer.

a. Cause of Death

Thus, the initial question is which cause of death is properly at issue. When the plaintiffs filed the original complaint in this matter in 2003, Mr. Hill did not have cancer. Rather, he was diagnosed with pancreatic cancer in May 2004. It is undisputed that after his death on July 30, 2004, his death certificate stated pancreatic cancer as the cause of death, not gastrointestinal cancer. It is also undisputed that for almost five years after Mr. Hill's death, all the parties operated from the assumption that he died of pancreatic cancer. Indeed, the medical records show pancreatic cancer.

Neither of Dr. Sawyer's expert reports reference gastrointestinal cancer. In his initial January 31, 2005 report, Dr. Sawyer listed Mr. Hill's diagnosis on page 40 as "[p]ancreatic carcinoma with liver metastases," and assumed pancreatic cancer in his conclusions on page 43. There is no mention

of gastrointestinal cancer. Similarly, Dr. Sawyer's March 13, 2009 supplemental report assumed pancreatic cancer on pages 2,16, 17, and 21. There is no reference to gastrointestinal cancer in Dr. Sawyer's supplemental report.

Dr. Dahlgren submitted three expert reports in the Hill matter.

In his first report of October 24, 2004, Dr. Dahlgren assumed pancreatic cancer as seen on pages 1, 3, 6 and 7. In fact, the first sentence on page one states: "David Hill died of pancreatic cancer on July 30, 2004" and on page 7 Dr. Dahlgren concluded: "He was diagnosed with pancreatic cancer in 2004." There is no reference to gastrointestinal cancer in the October 24, 2004 report. On page 6 under the "Review of Medical Records" section, Dr. Dahlgren first discussed the evidence of pancreatic cancer. Under the subsection titled "Gastrointestinal," Dr. Dahlgren then discussed the medical records pertaining to the gastrointestinal region, stating: "6/04 Several benign-appearing polyps Dr. Crafton, 6/04 colonoscopy with polypectomies: benign appearing colon polyps removed and fulgurated Dr. Crafton; 6/04 pathology: polyp ascending: tubular adenoma, polyp left colon: hyperplastic polyps of colon, tubular adenoma Dr. Fullenwider." Thus, in his initial report, Dr. Dahlgren considered the medical records pertaining to the gastrointestinal region, while not making reference to gastrointestinal cancer.

On March 12, 2009 Dr. Dahlgren submitted his first supplemental report in which he stated: "I have completed another study of residents living next to another wood treatment plant have [sic] a highly significant prevalence of cancer, especially *gastrointestinal* cancer like we have here with Mr. Hill." (emphasis added). There is no other reference to gastrointestinal cancer in his first supplemental report, nor did Dr. Dahlgren provide any explanation or analysis regarding the change of diagnosis from pancreatic to gastrointestinal cancer. Dr. Dahlgren submitted a second

supplemental report on May 22, 2009 in which he concluded on page 3: "The medical literature partially reviewed above is replete with articles and studies documenting the ability of the chemicals from the Kopper's [sic] at the doses experienced by Mr. Hill to cause his *gastrointestinal* malignancy. He had adenocarcinoma with liver metastasis from an unknown primary site; however it is my opinion that it is from the gastrointestinal tract." (emphasis added). The second supplemental report did not explain how the diagnosis changed from pancreatic cancer to gastrointestinal cancer, nor did it provide a factual analysis how Dr. Dahlgren arrived at the conclusion of gastrointestinal cancer. In any event, on September 30, 2009 the court excluded Dr. Dahlgren's second supplemental report of May 22, 2009 as untimely because it was submitted well after the March 13, 2009 deadline for supplemental expert reports.

As discussed above, the plain language of Federal Rule of Civil Procedure 26(a)(2) requires a party to submit a timely expert report that provides a "complete statement" of all opinions expressed therein which includes all of the facts upon which any conclusions are based and the methodology employed to reach those conclusions. The expert is required to "show his work" in his reports and the reports are to be "complete" to the extent that any other person in the expert's field could pick up the report and independently verify the contents therein. Otherwise, the opposing party would be required to rely on the mere *ipse dixit*, or learned say-so, of the expert which is clearly improper. *General Electric Co. v. Joiner*, 118 S.Ct. 512, 519 (1997) ("Nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert.").

Furthermore, as the court has cautioned the parties in prior opinions in this litigation, "Rule 26(a)(2) does not allow parties to cure deficient expert reports by supplementing them with later

deposition testimony. The purpose of Rule 26(a)(2) is to provide notice to opposing counsel-before the deposition-as to what the expert witness will testify...." *Ciomber v. Cooperative Plus, Inc.*, 527 F.3d 635, 642 (7th Cir. 2008); *Salgado by Salgado v. General Motors Corp.*, 150 F.3d 735, 741-742, n. 6 (7th Cir. 1998); *see also Sierra Club, Lone Star Chapter v. Cedar Point Oil Co., Inc.*, 73 F.3d 645, 571 (5th Cir. 1996). Thus, it is of no import whether, and to what extent, Sawyer or Dahlgren elucidated their new opinions that Mr. Hill died of gastrointestinal cancer rather than pancreatic since such opinions were given well after the March 13, 2009 expert deadline and the opinions and the basis therefor were not contained in a Rule 26 report.

Accordingly, the court concludes that the plaintiff is precluded from asserting that Mr. Hill's cause of death was not pancreatic cancer.

b. Rule 702 Analysis

Since the plaintiff is confined to pancreatic cancer as the cause of death, and not gastrointestinal cancer, the next question is whether the plaintiff's causation experts have provided sufficiently reliable opinions demonstrating that some or all of the subject chemicals generally and specifically caused Mr. Hill's pancreatic cancer.

A long analysis of this question is not required since the plaintiff's causation experts have admitted in deposition testimony, cited at length by the defendants in their briefs, that they are unaware of any peer-reviewed scientific studies linking the subject chemicals to pancreatic cancer. See Dahlgren's 1/10/06 Deposition, pp. 1219-1223, 1260, 1261; Sawyer's 4/24/09 Deposition, pp. 67-68, 127, 144, 163.

In their response brief to the defendants' motion for summary judgment, the plaintiff did not point to evidence of any scientific literature specifically linking the subject chemicals to pancreatic

9

cancer. Rather, the plaintiff concentrated her general and specific causation arguments on gastrointestinal cancer. Accordingly, since there has been no showing by the plaintiff that Drs. Sawyer and Dahlgren's provided "complete" reports reliably demonstrating that some or all of the subject chemicals generally can, and did in fact, cause pancreatic cancer – a burden that rests upon the plaintiffs – the court concludes that the defendants' motions to exclude the causation opinions of Drs. Sawyer and Dahlgren should be granted.

In summary, though the plaintiff submitted Rule 26(a)(2) reports, the opinions of Drs. Sawyer and Dahlgren that Mr. Hill died of gastrointestinal cancer, rather than pancreatic cancer, should be excluded since (a) the opinions were untimely because they were not contained in a report or supplemental report before the expert supplemental report deadline of March 13, 2009; (b) even if the opinions were given in a timely manner, such as the slight reference by Dr. Dahlgren to gastrointestinal cancer in his March 12, 2009 supplemental report, none of the reports provided a "complete statement" as required by Rule 26(a)(2) showing the factual basis and methodology for the change of diagnosis; and (c) any explanations regarding the change of diagnosis during depositions were given well after the March 13, 2009 supplemental report deadline and deposition testimony alone does not constitute a timely Rule 26(e)(1) supplemental expert report. Accordingly, the general causation opinions of Drs. Sawyer and Dahlgren must be excluded as unreliable given their admissions of the lack of peer-reviewed, scientific literature linking the subject chemicals to pancreatic cancer.

With specific regard to the Federal Rule of Evidence 702 requirements, though Drs. Sawyer and Dahlgren may be qualified to give toxicological and medical causation opinions (though not independent epidemiological opinions that the subject chemicals can cause pancreatic cancer since

neither of them are epidemiologists), their general causation opinions are based on insufficient facts given the lack of scientific literature or independent epidemiological evidence linking the subject chemicals to pancreatic cancer. Without independent scientific literature and without epidemiological analysis conducted by an epidemiologist linking the subject chemicals specifically to pancreatic cancer, any testimony that the chemicals can cause pancreatic cancer and did cause Mr. Hill's cancer would not be the product of a reliable method as required by Rule 702, but rather would be speculation.

**B. Motion for Summary Judgment**

1. Summary Judgment Standards

Summary judgment should be entered only if "[t]here is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment has the initial burden of demonstrating through the evidentiary materials that there is no actual dispute as to any material fact in the case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). On motion for summary judgment, "[t]he inquiry performed is the threshold inquiry of determining whether there is a need for a trial -- whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). In determining whether this burden has been met, the court should view the evidence introduced and all factual inferences from that evidence in the light most favorable to the party opposing the motion. *Id*. Furthermore, "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case,

and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

The summary judgment procedure does not authorize trial by affidavit. Rather, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict." *Anderson*, 477 U.S. at 255. Accordingly, a court may not decide any factual issues found in the record on motion for summary judgment, but if such material issues are present, the court must deny the motion and proceed to trial. *Impossible Elec. Tech. v. Wackenhut Protection Systems*, 669 F.2d l026, l03l (5th Cir. l982); *Environmental Defense Fund v. Marsh*, 65l F.2d 983, 99l (5th Cir. l98l); *Lighting Fixture & Electric Supply Co. v. Continental Ins. Co.*, 420 F.2d l2ll, l2l3 (5th Cir. l969).

Under the provisions of Federal Rule of Civil Procedure 56(e), a party against whom a motion for summary judgment is made may not merely rest upon his pleadings, but must, by affidavit, or other materials as provided in Rule 56, inform the court of specific facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324.

Summary judgment is not proper if a dispute about a material fact is "genuine," or in other words the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson*, 477 U.S. at 248. There is no such issue unless the evidence sufficiently supports the non-moving party's version of the facts for a jury to return a verdict in the non-moving party's favor. *Id.* at 249. The relevant inquiry is whether or not there is sufficient disagreement on the facts to submit them to the jury or whether it is so one-sided that one party should prevail as a matter of law. *Id.* at 251. The issue must be genuine, and not pretended, and the evidence relied on to create such an issue must be substantial. *Southern Distributing Co. v. Southdown, Inc.*, 574 F.2d 824, 826 (5th Cir.

1978).

2. Analysis

The defendants argue that since the causation opinions of Drs. Sawyer and Dahlgren should be excluded, the plaintiff's claims requiring general and specific causation should be dismissed with prejudice. These claims include negligence, gross negligence, negligence per se, "intentional tort," conspiracy, strict liability, and failure to warn. The defendants also argue that the plaintiff's property claims of trespass and private nuisance should be dismissed.

a. Physical injury claims

The plaintiff's ultimate burden in proving her claims involving physical injuries to Mr. Hill is to prove general causation (*i.e.*, that the subject chemicals *can* cause pancreatic cancer) and specific causation (*i.e.*, that the subject chemicals actually *did* cause Mr. Hill's pancreatic cancer). *Knight v. Kirby Inland Marine, Inc.*, 482 F.3d 347, 351 (5th Cir. 2007) ("General causation is whether a substance is capable of causing a particular injury or condition in the general population, while specific causation is whether a substance caused a particular individual's injury.")

In other words, the plaintiff must prove to the jury that it was more likely than not (*i.e.*, a 51% or more chance) that: (1) at least one of the subject chemical agents (or one of their constituents) can cause pancreatic cancer; (2) the minimum amount of the given chemical agent necessary to cause pancreatic cancer; (3) the amount of the given chemical agent to which Mr. Hill was exposed; and (4) that Mr. Hill was exposed to the requisite amount of at least one of the subject agents to cause his pancreatic cancer.

"[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial" and "mandates the entry of summary judgment" for

the moving party. *U.S. ex rel. Farmer v. City of Houston*, 523 F.3d 333, 338 (5th Cir. 2008).Even after viewing the facts in a light most favorable to the plaintiff, it is clear that she has not created and cannot create genuine issues of material fact warranting a trial on general and specific causation. Since the plaintiff's personal injuries claims – *i.e.*, negligence, gross negligence, negligence per se, "intentional tort," conspiracy, strict liability, and failure to warn – each require a showing of epidemiological and medical causation, the court must grant summary judgment on these claims.

b. Property claims

The remaining claims at issue are the plaintiff's property claims: trespass and private nuisance. The defendants argue that these claims should be dismissed because the plaintiff confessed in response to interrogatories that those claims were "not applicable" to the Estate of David Hill "as he is deceased." The defendants also argue that the nuisance claim is barred by the Right-to-Farm statute, Miss. Code Ann. § 95-3-29(1).

Because the parties did not adequately brief these issues, the court concludes that it will reserve ruling on the plaintiff's trespass and nuisance claims until the matters are more fully briefed.

### III. CONCLUSION

For the reasons discussed above, the court concludes that the defendants' motions to exclude the expert testimony of William R. Sawyer [1271] and James G. Dahlgren [1273] should be granted and that their causation opinions should be excluded. The court also concludes that the defendants' motion for summary judgment [1275] should be granted on the plaintiff's negligence, gross negligence, negligence per se, "intentional tort," conspiracy, strict liability, and failure to warn claims. The court will reserve its ruling on the plaintiff's trespass and nuisance claims until the matters are more fully briefed. Accordingly, an Order shall issue forthwith,

**THIS DAY** of December 11, 2009.

                                            /s/ W. Allen Pepper, Jr.
                                            W. ALLEN PEPPER, JR.
                                            UNITED STATES DISTRICT JUDGE